UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


IN THE MATTER OF THE COMPLAINT
OF KIRBY INLAND MARINE, L.P.,          CIVIL ACTION
AS DEMISE CHARTERER OF THE T/B
KIRBY 7304 PETITIONING FOR             NUMBER 04-611-SCR
EXONERATION FROM OR LIMITATION
OF LIABILITY


consolidated with

MAUDRIE BARTNEY, INDIVIDUALLY,
ETC.                                   CIVIL ACTION

VERSUS                                 NUMBER 05-953-SCR

KIRBY INLAND MARINE, L.P.


consolidated with

CHISWAN LEJEUNE, TERRANCE WEST,
INDIVIDUALLY, ETC.                     CIVIL ACTION

VERSUS                                 NUMBER 05-954-SCR

KIRBY INLAND MARINE, L.P.


consolidated with

CHISWAN LEJEUNE, TERRANCE WEST,
INDIVIDUALLY, ETC.                     CIVIL ACTION

VERSUS                                 NUMBER 06-647-SCR

RIVER CITY TOWING SERVICES,
INC., ET AL

consolidated with

CHISWAN LEJEUNE, TERRANCE WEST,
INDIVIDUALLY, ETC.

VERSUS                              CIVIL ACTION

TESSENDERLO DAVISON CHEMICALS,      NUMBER 08-20-SCR
L.L.C., TESSENDERLO KERLEY,
INC., AND DAVISON PETROLEUM
PRODUCTS, L.L.C.

## RULING ON MOTION FOR ATTORNEY COST AND COMMON BENEFIT FEES

Before the court is a Motion for Attorney Cost and Common Benefit Fees filed by the Claimants' Steering Committee (CSC). Record document number 201. The motion was filed pursuant to the court's order issued on June 10, 2008, which required the CSC to file a motion under Rule 54, Fed.R.Civ.P., containing recommendations for the payment of common benefit attorney time and costs to specific attorneys who performed common benefit work.[1] The recommendations contained in the motion were made by a committee composed of co-lead counsel for the CSC, Donna Grodner and Steve Irving.

The same order also set a deadline of July 8, 2008 for responses/objections to be filed to the CSC motion by any attorney enrolled in the proceeding who wanted to challenge his or her

---

[1] Record document number 199. Ten attorneys submitted time for common benefit work: Donna Grodner, Steve Irving, Denise Vinet, John Smith, Willie Singleton, Rebecca Cunard, Martin Maley, Bryan Jones, Dan Foley, and Etta Kay Hearn. These attorneys, with the exception of Foley and Hearn, and attorney Edmond Jordon also submitted claims for common benefit litigation and administrative costs.

2

recommended award.   Only two attorneys filed objections to the recommendations.   Objections were filed by Dan Foley[2] and Rebecca Cunard.[3]

## **Applicable Law**

Rule 23(h), Fed.R.Civ.P. provides in pertinent part that "[i]n an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of the parties."  The court has a duty under Rule 23 to protect absent class members and supervise class actions.  This duty is not limited to a review of the substantive claims included in the  settlement agreement.  To fulfill its duty to review and approve class action settlement agreements, the court is obligated to explore the manner in which fees of class counsel are to be paid and the reasonableness of the amount paid for their services.  *In re High Sulfur Content Gasoline Products*, 517 F.3d 220 (5th Cir. 2008); *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).  The purpose of this requirement is to protect the nonparty members of the class, and minimize conflicts between the attorneys and the class, and the named plaintiffs and the absentees.  *Id*.  The court's examination of attorneys' fees also

---

[2] Record document number 218.   Foley later withdrew his objection.  Record document number 474; Foley Exhibit 1.

[3] Record document number 219.  Co-lead counsel filed a reply to Cunard's objection.  Record document number 226.  Cunard filed a response to the reply memorandum.  Record document number 235.

guards against the public perception that attorneys use the class action to obtain large fees at the expense of the class. *Id.*, *citing*, *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995).

The court is not bound by the agreement of the parties as to the amount of attorneys' fees. Furthermore, the fact that a defendant will pay the fees from its own funds does not limit the court's obligation to review the reasonableness of the agreement as to fees. *Strong*, 137 F.3d at 849-50.[4] "Even when the district court finds the settlement agreement to be untainted by collusion, fraud, and other irregularities, the court must thoroughly review the attorneys' fees agreed to by the parties in the proposed settlement agreement." *Id.*, at 850. To fulfill its duty, the court must not cursorily approve the fee provision of a class settlement or delegate that duty to the parties. *In re High Sulfur Content,* 517 F.3d at 228.

The lodestar method is generally used to assess attorney's fees in class action suits. Multiplication of the number of hours reasonably expended by the reasonable hourly rate, yields the lodestar figure. There is a strong presumption that the calculated

---

[4] For the court to do only a perfunctory review under these circumstances would ignore the economic reality that a settling defendant is concerned only with its total liability. *Strong*, *supra*, *citing*, *In re GM Trucks*, 55 F.3d at 819-20; *Foster v. Boise-Cascade, Inc.*, 420 F.Supp. 674, 687-88 (S.D.Tex. 1976), *aff'd*, 577 F.2d 335 (5th Cir. 1978); *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir. 1991).

lodestar award is the reasonable fee. *See*, *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

After the court calculates the lodestar, the court must scrutinize the award under the *Johnson* factors and not merely ratify a pre-arranged compact. *In re High Sulfur Content,* 517 F.3d at 228. The lodestar may be adjusted upward or downward based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*:[5] (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Nevertheless, the lodestar may be adjusted by a *Johnson* factor only if that factor is not already taken into account by the lodestar. *Strong*, 137 F.3d at 850. Factors one through four and six through nine are generally already taken into consideration in the lodestar calculation. *Heidtman v. County of El Paso*, 171 F.3d 1038 (5th Cir. 1999); *Matter of Fender*, 12 F.3d 480 (5th Cir. 1994); *Walker v. U.S. Dept. of Housing*, 99 F.3d 761,

---

[5] 488 F.2d 714, 717-19 (5th Cir. 1974).

771-72 (5th Cir. 1996).   The fee applicant has the burden of showing that an enhancement of the lodestar is necessary to the determination of a reasonable fee.   *Heidtman*, 171 F.3d at 1044.

## Analysis

**Lodestar: Reasonable Hourly Rate**

With regard to establishing a reasonable hourly rate, co-lead counsel proposed that the hourly rate awarded should range from $175.00 to $300.00.   This recommendation was based on the knowledge, skill and experience of the attorneys performing common benefit work,[6] and the customary hourly rates that they charge clients.   The recommendation was also based on the fact that work performed in the litigation which would have normally been done by a special master or other outside expert, such as the zone analysis and allocation scheme, was performed by co-lead counsel with the assistance of the court.   Special masters employed to perform these tasks charge between $250 to $350 an hour.

Many of the records submitted for review did not have any information about the attorney's usual hourly rate.   Some of the time records submitted by the attorneys included an hourly rate for

---

[6] The general role/contribution of each attorney who performed common benefit work, and the knowledge, skill and experience that attorney brought to the litigation, was set forth in the motion. Record document number 201-3, pp. 11-20.   Based on the court's close involvement with this litigation, the summary provided is adequate and accurate.   It is unnecessary to repeat the information in this ruling.

the services performed.   The hourly rates that were provided in these records ranged from $125 to $250.[7]

At the fairness hearing, CSC member and co-lead counsel Steve Irving offered opinion testimony under Rule 702, Fed.R.Evid., on the award of a reasonable fee in this case.[8]  Irving testified about setting an hourly rate that would provide reasonable compensation for all of the attorneys who did common benefit work. According to Irving, a reasonable range for the hourly rates in the Baton Rouge community for similar work would be $150 for less experienced attorneys, and would go up to $275 an hour for more knowledgeable and experienced attorneys. All of the attorneys involved in this class action effort were experienced.   Therefore, Irving contended that a blended hourly rate of $200 would be reasonable to compensate the attorneys for the common benefit work each performed.

Considering the documentation submitted by the attorneys, Irving's testimony, the court's involvement in this case and in recommending awards of attorneys fees in this district, $200 is a fair and reasonable hourly rate to compensate each of the attorneys

---

[7] It is unremarkable that some of the attorney time records indicated an hourly rate and some did not.   As explained in Irving's testimony, this is not a case in which the clients were billed on an hourly basis.   The cases were taken based on contingency agreements because the clients did not have the financial means to pay the attorneys by the hour for their work.

[8] Record document number 474.

for the time they submitted.[9]  This rate will be used to calculate the lodestar.

### Lodestar: Number of Hours Reasonably Expended

Each attorney claiming fees for common benefit work provided documentation which was reviewed by the committee composed of co-lead counsel.  The time submitted was reviewed by the committee using guidelines established for the purposes of uniformity, fairness, reasonableness and the exercise of billing judgment.  The motion set forth the following guidelines used by co-lead counsel to review the fees for attorneys and their staffs: (1) time for receipt and review of documents (the largest category) was allowed at one-fourth of an hour for each piece of correspondence, but receipt and review by associate attorneys or staff and duplicate/triplicate charges for receipt and review were not allowed; (2) time of one-fourth of an hour was allowed for every three e-mails (the second largest category) for which time was

---

[9] A reasonable hourly rate should be in accord with rates prevailing in the community for similar services by attorneys of reasonably comparable skill, experience and reputation.  The relevant legal community is the one in which the district court sits.  In addition to the community rate, the district court must also consider the attorney's regular rates.  *See*, *In re Enron Corp. Securities*, 2008 WL 4178130 (S.D. Tex. Sept. 8, 2008).  While the court cannot simply rely on its experience to set a reasonable hourly rate, the court may look to its own knowledge and experience in establishing a reasonable rate.  See, *League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997); *Hagan v. MRS Associates, Inc.*, 2001 WL 531119 (E.D. La. May 15, 2001).

submitted; (3) if a secretary prepared letters, the attorneys were not allowed any time for this task; (4) time records must have been kept contemporaneously with the performance of the service; (5) acceptable time records were those that provided the name/title of the provider, duration of the service and a detailed statement of the service performed; (6) noncommon benefit tasks, duplicative entries and block billing were not recommended for compensation; (7) interoffice billing generally was not allowed, but some was allowed out of an abundance of caution and fairness to the attorney; (8) billing for secretarial, clerk and paralegal time that was not expended for the common benefit of the class was not allowed, and time submitted for paralegal work that was actually secretarial or clerk work was not paid at a paralegal rate, but the secretarial or clerk rate.

No objections were made to the guidelines used to review the time records submitted by the attorneys. The court finds that the guidelines used to review the attorney/staff time were fair and reasonable, and reflect the exercise of adequate billing judgment to insure that duplicative, redundant, unproductive or excessive time is not compensated. The committee's review and recommendations demonstrate substantial compliance with these guidelines. Based on the guidelines, the review of the committee and the court, the specific recommendations for the amount of time that each attorney is to be compensated are reasonable. With the

exception of the time for Grodner and Cunard, which will be addressed separately, the following attorneys are entitled to be compensated at the rate of $200 per hour for the following number of hours: Steve Irving - 1822.75 hours; Denise Vinet - 706.00 hours; John Smith - 402.00 hours; Willie Singleton - 396.08 hours; Martin Maley - 153.50 hours; Bryan Jones - 403.00 hours; Dan Foley - 118.85 hours; and, Etta Kay Hearn - 168.5 hours.

### Class Litigation Costs and Expenses

The committee reviewed the class litigation costs and expenses for which the attorneys claimed reimbursement. The following guidelines were used: (1) secretarial work that was not duplicative and benefitted the class was paid at the rate of $35 an hour; (2) clerk and data entry work that benefitted the class was allowed at $12 an hour; (3) all attorneys who claimed reimbursement for incoming/outgoing faxes were awarded $1,077.75 regardless of how many faxes they claimed; (4) commercial copying costs, long distance telephone charges and postage were required to be documented, and any estimated charges submitted for these items were deemed undocumented and not allowed; (5) documented in-house copying costs were allowed at 25 cents per page; (6) documented Westlaw and Pacer research charges were allowed; (7) rent charges related to claims processing were allowed if they were explained and documented; (8) travel expenses for airfare, parking and meals were allowed when they were itemized and documented; (9) mileage

was calculated using a sliding rate for the years 2004 through 2008; (10) expenses and time associated with the claims office was allowed if it was documented by date, person and task; (11) common benefit paralegal services that were not in fact secretarial or clerk work were allowed at a rate of $50 an hour.[10]

According to the order establishing the cost reserves for the class settlement fund, the Reserve for Class Litigation Costs and Expenses was set at $478,875.08 for both hard and soft costs.[11] These costs include, but are not limited to, court costs, expert and other litigation expenses timely submitted and approved by the court, and administrative costs incurred for processing these. The Reserve for Class Administrative Costs and Expenses was fixed at $159,625.03 for cost attributable to the settlement process, the certification of the class, notification, the proof of claims process, data management and database preparation.[12] A review of the costs/expenses recommendation contained in the motion shows that the costs labeled as "soft costs" (paralegal, secretarial,

---

[10] The committee defined paralegal work as work that is traditionally done by a lawyer, but performed by a staff person under the supervision of an attorney. Examples of such work would be factual investigation, including locating and interviewing witnesses, assistance with depositions, interrogatories and document production, compilation of statistical and financial data, checking legal citations and drafting legal correspondence that included research or citations. Record document number 201-3, p. 10.

[11] Record document number 195, ¶ II.B.2.a.

[12] *Id.*, ¶ II.B.2.b.

clerk/data entry) on the chart  actually fall in the category of the Reserve for Class Administrative Costs and Expenses and are not "soft costs" as that term is used in the Reserve for Class Litigation Costs and Expenses.

The guidelines used to review the attorneys' submissions for costs and expenses are fair and reasonable and assure that undocumented and/or excessive charges were not recommended for payment.  Based on the guidelines, the committee's review and the court's review, the specific recommendations for the payment of costs/expenses to each attorney is reasonable.  With the exception of the amounts for Grodner and Cunard, which will be addressed separately, the attorneys listed are entitled to the following amounts for common benefit costs and expenses:

Class Litigation Costs and Expenses: Steve Irving - $7,287.34; Denise Vinet - $54,832.10; John Smith - $142,412.13; Willie Singleton - $49,410.77; Martin Maley - $7,678.37; Bryan Jones - $9,145.25; and, Edmond Jordon - $1,753.14.

Class Administrative Costs and Expenses: Steve Irving - $1,142.00; John Smith - $135.00; Willie Singleton - $10,794.50; and, Martin Maley - $519.00.

**Donna Grodner and Rebecca Cunard**

Cunard generally asserted that the recommended amount she should be paid for her common benefit fees and costs was unfair and

inaccurate.[13]   Cunard also objected to some of the time and costs recommended for payment to Grodner.  Cunard did not object to the framework and guidelines used for review of her time and costs.[14]

### Cunard's Objections:  Review of Her Own Time and Costs

In support of her arguments, Cunard submitted Exhibit A, which is a 14 page excerpt from her time records, and also attached Exhibits DD-HH to her second memorandum.  Cunard asserted that these records demonstrate that the guidelines were not followed in reviewing her time, and that she was improperly denied adequate compensation for the common benefit work she performed as liaison counsel and a member of the CSC.

A review of the records shows that some of Cunard's arguments have merit and some do not.

_____

[13] Cunard is a member of the CSC in state and federal court and was the appointed liaison counsel in both courts.  Her primary duty was communicating all aspects of the litigation to the attorneys involved in the cases.

[14] Record document number 219, Cunard's Objection, p. 2. Cunard urged the court to reject the entire review/recommendation on common benefit fees and costs.  Cunard also stated that she had not yet reviewed the billing of Steve Irving, co-lead counsel. Record document number 235, p. 3.  Cunard failed to provide a basis for rejection of the entire recommendation.  The court's order required that all objections to the recommendations state the factual and legal basis for the objection.  Record document number 199, paragraph I.  Therefore, there is no basis to summarily reject any aspect of the recommendation that has not been specifically and adequately challenged.  Furthermore, Cunard did not make any specific objections regarding the review/recommendation as to Irving.  To the extent Cunard implies that her lack of review means that she might have objections, it is too late to make those objections.

Cunard objected to disapproval of billing hours for her study of defense pleadings and documents.  Co-lead counsel responded that this time was not approved because Cunard did not play any significant role in the action through motion practice, and was not responsible for preparing any response to motions.  Co-lead counsel noted that one-fourth of an hour was allowed for receipt and review of defense pleadings, along with court orders, rulings and minute entries.  However, time for "studying" defense and other documents was not common benefit work.

A review of the records shows that many hours were billed by Cunard for studying various pleadings and documents.  Cunard did not explain why this work was necessary, benefitted the class or was otherwise a part of her role and duties as liaison counsel. The record supports the recommendation that these hours should not be compensated as common benefit work.

Cunard asserted that regardless of the nature of the "read and review" entries, the time for them was not approved.  Likewise, billing was not approved for the study of court orders, rulings and minute entries.  Co-lead counsel explained that "read and review" time was not approved for every e-mail.  Under the guidelines only one-fourth of an hour was counted for every three e-mails, and time for receipt and review of each document, order, ruling and minute entry was approved for one-fourth hour.  Cunard failed to point out any specific entries that she claims were not properly counted

14

under these guidelines.

Cunard claimed that her time was not approved for attending status conferences in state and federal court and CSC meetings. Co-lead counsel responded that this objection was not supported by Exhibit A.  However, in her reply memorandum, Cunard pointed out three entries where such time was not approved.  The total time for this common benefit work was 16.5 hours, which will be added to Cunard's total.

Cunard asserted that billing was disapproved for meetings that included Dan Foley, the Court Appointed Disbursing Agent (CADA) and/or defense counsel.  Co-lead counsel  agreed that in many instances this time was not approved, but argued that this was justified because Foley's time records did not reflect the same events, and Cunard was not involved with the punitive damages issue.

Exhibits DD, EE, FF and GG show that Foley's submission for common benefit attorney's fees did not include some conferences with Cunard, other CSC counsel, and defense attorneys, and that Cunard did some work on the issue of punitive damages.  Co-lead counsel did not assert that punitive damages was not a common benefit matter.  Review of entries for 5/11/05 and 5/25/05 and the entries that relate to the exhibits submitted by Cunard support the addition of 13.5 hours.

Cunard also objected to the disapproval of time for

drafting/redrafting CSC pleadings or documents.  Co-lead counsel responded that the 3 hours listed for 5/3/08 should have been approved if it was for the filing of a new suit, and that Cunard made only minor revisions to requests for admissions on 5/10/05. Based on Cunard's explanation and Exhibit HH, 6 hours will be added for this work.

Cunard objected to co-lead counsel approval of common benefit hours for Grodner's associate attorneys and disapproval of all common benefit hours outside the Brusly claims office for her associate attorney Trae Welch.  However, co-lead counsel's response and Cunard's reply discussed compensation for Welch's time at the claims office.  Given this discrepancy in the arguments, the issue can only be resolved by focusing on Cunard's initial argument and a review of the hours submitted for Welch.

Welch's list of services consisted of 16 entries from September 3, 2004 to October 21, 2005.  A total of 49.5 hours was attributed to work at the Brusly claims office.  This attorney time was apparently recommended for compensation,[15] and the remaining 26.5 hours were not recommended based on a lack of sufficient explanation for the services provided.

A review of the 26.5 hours that were not recommended for

---

[15] From a review of the time records and the proposed order, it appears that Welch's 49.5 hours were added to 371 hours for Cunard, for a total of 420.5 recommended for payment as common benefit attorney time to Cunard.  Record document number 201-2.

compensation shows that in fact many of the entries are too vague. However, the two entries dated 2/20/05 and 2/22/05 appear to be necessary to the claims office/process and should be compensated. These two entries represent 6 hours that will be added to the number of attorney hours for Cunard.

Cunard's largest objection involved the compensation recommended for preparing and transmitting information/documents to fulfill her duties as liaison counsel. Co-lead counsel noted that a total of one hour - one-half attorney time and one-half paralegal time - was billed by Cunard for preparation and transmission, when the transmissions themselves indicate that they were actually handled by the secretary/paralegal and not the attorney. Co-lead counsel also noted that counsel were served multiple times – by e-mail, fax and hard copy – and that this pattern continued even after the court began mandatory electronic case filing and service.[16]  For these reasons, co-lead counsel recommended that no attorney time be compensated, and that 290.88 hours of paralegal time be compensated at the secretarial rate of $35 an hour, for a total of $10,180.80.  In response, Cunard stated that as liaison counsel in all consolidated cases in both state and federal court she effected hundreds of services in over a four year period. Cunard asserted that she personally drafted the transmittal

---

[16]  Cunard did not contest co-lead counsel's statements regarding the multiple and/or unnecessary service.

correspondence, and that each attachment or exhibit was assembled and reviewed by her.  Therefore, her common benefit time for this work should be approved.

Review of Cunard's billing records shows entries reflecting approximately 850 transmittals.  Accepting Cunard's statements of her involvement in the tasks of drafting/preparing/reviewing the outgoing information and documents, it is fair and reasonable to award some time for this work.  If one-fourth of an hour is allowed for each transmission, the result is a total of 212.50 hours.  However, these tasks do not involve the type of work that requires legal skill or experience to accomplish.  It would not be reasonable for all of the time to be fully compensated at an attorney billing rate.  A one-third portion of this time is a reasonable number of hours to allow for these services.  Therefore, 71 hours will be added to the recommended hours for Cunard.

Cunard objected to co-lead counsel's approval of bonus fax costs for themselves, and disapproval of "fax costs and other costs for Rebecca Cunard."[17]  Cunard did not submit an exhibit or otherwise point to anything in the record to support the assertion that co-lead counsel approved bonus fax costs for themselves.  Co-lead counsel responded that all attorneys, regardless of their actual fax costs, were awarded the same amount for faxes – $1,077.75.  A review of the motion and proposed order shows that

---

[17] Record document number 219, pp. 3-4.

this amount for faxes was listed for all the attorneys who claimed such costs.  Since Cunard's claim that fax costs were unfairly awarded is unsupported, there is no basis to change the recommendation for the award of fax costs.

Cunard disputed the recommendation with regard to payment of the paralegal costs she submitted for reimbursement.  Under the guidelines for reviewing common benefit fees and costs, paralegal work was defined as work that is traditionally done by a lawyer, but performed by a staff person under the supervision of an attorney.  Therefore, paralegal work would include tasks such as factual investigation, including locating and interviewing witnesses, assistance with depositions, interrogatories and document production, compilation of statistical and financial data, checking legal citations and drafting legal correspondence that included research or citations.  If the paralegal costs submitted did not fall within these parameters, it was categorized as secretarial work and compensated at $35 an hour.

Cunard requested approval for 581.75 hours of paralegal work performed by Michelle Johns.  Of these hours, 290.88 were approved for compensation, but the hours were not compensated as paralegal work, but as secretarial work at the rate of $35 for a total payment of $10,180.80 to Cunard for the paralegal time submitted.  Co-lead counsel maintained that none of the descriptions given for the work of Cunard's paralegal satisfied the definition of

19

"paralegal work."

Review of the billing records that Cunard submitted for her paralegal from April 20, 2004 to March 30, 2008 shows that the activities billed for her work did not satisfy the guideline definition of "paralegal work." The entries demonstrate that all but a few of the activities on each page were for calendaring, copying, and submitting or sending faxes, correspondence and e-mails. One-fourth of an hour is also a reasonable amount of time to allow for these services. Thus, Cunard has not supplied a reasonable legal or factual basis to change co-lead counsel's recommendation that this time be reimbursed as secretarial work in the amount of $10,180.80.

The total of the above additions to the common benefit hours recommended for payment to Cunard is 113.00 hours. This results in a total of 533.50 approved common benefit hours for Cunard, which is a fair and reasonable total based on the guidelines and the court's review. There are no changes to the recommendation for payment of Cunard's common benefit litigation and administrative costs.

Cunard's Objections:  Review of Grodner's Time and Costs

Relying on Exhibits B and G, Cunard asserted that billing for work on individual client matters by Grodner and her employees were wrongly approved for payment as common benefit work. Co-lead counsel did not specifically address these arguments, or otherwise

20

explain how the entries Cunard complained about were common benefit work.  It is not apparent from a review of the services that they were in fact common benefit work.  Therefore, the 3.5 hours of attorney time questioned in Exhibit B and the 276.05 hours of clerk time questioned in Exhibit G will be deducted.

Citing Exhibits C and F, Cunard asserted that duplicate billing was approved for Grodner and on one occasion billing was approved for as much as 20.5 hours in one day - May 18, 2005.  In response, co-lead counsel conceded that some of the entries were duplicate, and that 4 hours should not have been billed on May 18.

A review of the entries demonstrates that Exhibit C reflects 24.5 hours of duplicate billing and that 4 hours claimed for May 18 should not have been billed.  Therefore, a total of 28.5 hours of attorney time for Grodner will be deducted based on Exhibits C and F.

With regard to Exhibit E, Cunard asserted that it demonstrates vague billing entries that should not have been recommended for payment.  A review of the items supports the claim that the description of the services rendered lacks the sufficient detail required for compensation as common benefit work.  The exhibit reflects 10.5 hours of vague entries that will be subtracted from Grodner's hours.

Finally, Cunard submitted Exhibit D and Exhibit BB to support her argument that contrary to the guidelines established by co-lead

counsel, block billed and miscalculated hours were approved for payment.   Co-lead counsel conceded that some e-mails were inadvertently approved for payment at one-fourth of an hour each. With regard to the e-mails grouped together for billing, co-lead counsel stated that this complied with the guideline for allowing one-fourth of an hour for every three e-mails.   However, counsel failed to address or explain the reason for the block billing, or provide any justification for it in light of the stated guideline that block billing would not be considered.[18]

A review of Exhibit D and BB reveals a total of 154.25 hours of block billing that was approved contrary to the guidelines, and 1.25 hours that should not have been allowed for e-mails.[19]   The total number of hours to be deducted for the miscalculation of time allowed for e-mails and block billing demonstrated by Exhibits D and Exhibit BB is 155.50 hours.

The total of the above deductions from the common benefit hours recommended for payment to Grodner is 198 hours.   This results in a total of 1,821 approved common benefit hours for Grodner.   Based on the guidelines and the court's review this number of hours for the work performed is fair and reasonable.   A total of 276.05 hours of clerk time at $12 per hour must also be

---

[18] Record document number 201-3, p. 9.

[19] *See*, entry nos. 60819, 61597, 55664, 61722, 54545, 60431, 60434, 61597(e-mails); 57663, 57664, 57665, 57959, 61854, 61820 through 61853 (block billing).

deducted from Grodner's common benefit administrative costs, resulting in a new total for these costs of $78,025.84.

### Summary of Findings

The reasonable hourly rate for all of the attorney common benefit work is $200 an hour.  The total number of hours reasonably expended for the common benefit services of the attorneys is 6,525.18.  The lodestar calculation totals $1,305,036.00.

The lodestar is presumptively reasonable.  Here, the lodestar takes into account all of the following *Johnson* factors - time and labor required, skill and experience/reputation of the attorneys, the difficulty of the issues, time limitations imposed and preclusion of other employment - and there is no legal or factual basis for an upward or downward adjustment based on any of the remaining factors.[20]  The CSC did not specifically request any increase to the lodestar figure based on a multiplier or *Johnson* factor that is not already included in the lodestar calculation.  For these reasons, there is no basis to depart from the lodestar calculation.

The reasonableness of the lodestar figure is also supported by the fact that it only reflects the common benefit work of the attorneys through May 15, 2008.  The CSC and other attorneys

---

[20] *See*, Record document number 201-3, pp. 8-28 (discussion of the specific facts of this case as it relates to the *Johnson* factors).

performed common benefit work after this date, particularly in connection with the July fairness hearing, for which they have not submitted any time for compensation.

Nevertheless, at this time the total lodestar amount cannot be paid the attorneys entitled to an award. The lodestar figure - $1,305,036.00 - exceeds the Reserve for Claimants' Steering Committee Attorney Fees, which is $1,117,375.20. Therefore, each award must be reduced by 14.38 percent so that the amount paid does not exceed the reserve. The fairest approach is to use the same percentage to calculate the reduction to the individual lodestar figure for each attorney. Ultimately, accumulated interest and funds remaining in other reserves may allow the court to order an additional payment to the attorneys which will increase the amount they are paid for their common benefit work.

Considering the long history of this litigation, the voluminous record, and the time spent by all the attorneys involved, it is not reasonable to expect that the attorneys' submissions for common benefit fees and costs would error-free. Nor is it reasonable to expect that the committee's review of their submissions would be perfect. Perfection is not required. The law requires only that proportional,[21] fair and reasonable fees be set. Considering the history of this litigation, the attorneys'

---

[21] Allocation means proportion, which in this context means a comparison of the share one counsel is receiving to the shares of the others. *In re High Sulfur Content*, *supra.*

submissions, the review and recommendations of co-lead counsel, and the specific objections raised, the final determination of common benefit fees and costs is both fair and reasonable.

## Conclusion

Accordingly, the Motion for Attorney Cost and Common Benefit Fees filed by the Claimants' Steering Committee (CSC) is granted in accordance with the findings in this ruling.

The following charts summarize the court's findings on the allocation of common benefit attorneys' fees and costs.

### Common Benefit Attorneys' Fees

| Attorney | Hours Claimed | Hours Approved | Hourly Rate | Fee |
|---|---|---|---|---|
| Steve Irving | 2,368.25 | 1,822.75 | $200.00 | $364,550.00 |
| Donna Grodner | 2,184.00 | 1,821.00 | $200.00 | $364,200.00 |
| Denise Vinet | 1,465.00 | 706.00 | $200.00 | $141,200.00 |
| Rebecca Cunard | 2,346.51 | 533.50 | $200.00 | $106,700.00 |
| John Smith | 578.00 | 402.00 | $200.00 | $80,400.00 |
| Willie Singleton | 560.95 | 396.08 | $200.00 | $79,216.00 |
| Martin Maley | 155.00 | 153.50 | $200.00 | $30,700.00 |
| Bryan Jones | 711.00 | 403.00 | $200.00 | $80,600.00 |
| Dan Foley | 136.08 | 118.85 | $200.00 | $23,770.00 |
| Etta Kay Hearn | 168.50 | 168.50 | $200.00 | $33,700.00 |
| TOTALS | 10,673.29 | 6,525.18 | $200.00 | $1,305,036.00 |

**Initial Payments for Each Attorney**

| Attorney | Fee | Percent Reduction | Initial Fee Payment |
|---|---|---|---|
| Steve Irving | $364,550.00 | 14.38% | $312,127.71 |
| Donna Grodner | $364,200.00 | 14.38% | $311,828.04 |
| Denise Vinet | $141,200.00 | 14.38% | $120,895.44 |
| Rebecca Cunard | $106,700.00 | 14.38% | $91,356.54 |
| John Smith | $80,400.00 | 14.38% | $68,838.48 |
| Willie Singleton | $79,216.00 | 14.38% | $67,824.74 |
| Martin Maley | $30,700.00 | 14.38% | $26,285.34 |
| Bryan Jones | $80,600.00 | 14.38% | $69,009.72 |
| Dan Foley | $23,770.00 | 14.38% | $20,351.87 |
| Etta Kay Hearn | $33,700.00 | 14.38% | $28,853.94 |
| TOTALS | $1,305,036.00 | 14.38% | $1,117,371.82 |

**Litigation and Related Administrative Costs**

| Attorney | Litigation Costs | Administrative Costs |
|---|---|---|
| Steve Irving | $7,287.34 | $1,142.00 |
| Donna Grodner | $115,716.72 | $78,025.84 |
| Denise Vinet | $54,832.10 | $0.00 |
| Rebecca Cunard | $52,019.34 | $10,180.80 |
| John Smith | $142,412.13 | $135.00 |
| Willie Singleton | $49,410.77 | $10,794.50 |
| Martin Maley | $7,678.37 | $519.00 |
| Bryan Jones | $9,145.25 | $0.00 |
| Edmond Jordon | $1,753.14 | $0.00 |
| TOTALS | $440,255.16 | $100,797.14 |

26

At an appropriate time the court will issue an order authorizing the Court Appointed Escrow Agent and the CADA to pay to the attorneys the fees and costs from the Class Settlement Fund reserves designated for those purposes.

Baton Rouge, Louisiana, October 16, 2008.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE